AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Colorado

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| | ) |
| Dell Inspiron 537 Computer Serial No. SN8LX2WH1 | ) |
| Held at IRS-CI Office 1999 Broadway St., 27th Floor | ) |
| Denver, CO  80202 | ) |

Case No.  09-SW-5351-CBS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ State and _____ District of _____ Colorado _____ *(identify the person or describe property to be searched and give its location):*  **See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*  **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

&#x2612; evidence of a crime;

&#x2612; contraband, fruits of crime, or other items illegally possessed;

&#x2612; property designed for use, intended for use, or used in committing a crime;

&#x2610; a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ____ 18 ____ U.S.C. § § 1956, 287, and 1343 ____ and the application is based on these facts:

**See attached affidavit**

&#x2713; Continued on the attached sheet.

&#x2713; Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Trista G Merz  Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10/25/09

City and state:  _____

*Judge's signature*

**Craig B. Shaffer, United States Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

## ITEM TO BE SEARCHED

**Dell Inspiron 537 Computer**
**IRS-CI Office 1999 Broadway St., 27th floor, Denver, CO 80202**

The item to be searched is a Dell Inspiron 537 Computer serial number: SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, Colorado being stored at the IRS-CI office located at 1999 Broadway St., 27th floor, Denver, Colorado 80202.

ATTACHMENT B

ITEMS TO BE SEIZED

1. All records, including text, graphic image or other electronic data relating to violations of federal law involving Title 18 United States Code, Section 287 (False and Fictitious Claims), Title 18, United States Code, Section 1343 (wire fraud) and Title 18 United States Code, Section 1956 (money laundering) involving Quintin for the period of January 1, 2008 to October 7, 2009, including specifically:

A. All rolodexes, calendars, diaries, customer and supplier contact information and appointment books;

B. Any personal and business bank records, including, bank statements, financial statements, accounting ledgers, loan documents, payroll records, safe deposit records, receipts for cashier's checks, money orders, and traveler's checks, records of savings and checking accounts, records relating to wire transfers, and credit card information related to Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company;

C. Documents relating to business and personal income and expenses, including, business and personal income tax returns; return information; Forms W-2, 1098, and 1099; invoices, receipts, prepared books and records; stock brokerage statements; inventory records; records of capital assets, depletion and depreciation; cash disbursement and receipt journals, general ledgers, subsidiary ledgers, trial balances and financial statements, summary sheets; prepared income tax worksheets and schedules related to Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company;

D. Documents relating to the establishment, ownership, or control of Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company, including Articles of Incorporation, contracts, loan agreements, memorandum of understanding, promissory notes, invoices, business licenses, professional licenses and registrations;

E. Documents relating to businesses, assets, or property, owned wholly or partially by Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company, including records used to prepare federal income tax returns such as 1099 Forms, W-2 Forms, purchase and sale agreements, billing records, client lists, Quickbooks, cash receipts, receipt books and expense receipts;

F. All employment records, including W-2 Forms, W-4 Forms, 1099 Forms, employment applications, schedules or lists of payments and payroll records for

Thomas Quintin, Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company;

G.  Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

2.  For any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.  evidence of the times the COMPUTER was used;

g.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i.  contextual information necessary to understand the evidence described in this attachment.

## AFFIDAVIT FOR SEARCH WARRANT

I, Trista G. Merz, being duly sworn, hereby depose and state:

## INTRODUCTION

1.  The Internal Revenue Service-Criminal Investigation (IRS-CI) has collected information concerning the illegal activities of Thomas William Quintin (Quintin), the owner of Total Tax Services, Total Tax Services, LLC, Total Tax and Accounting and DTC Gold Company. Quintin is believed to be involved in federal wire fraud, money laundering and tax violations in Colorado. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for a Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI Office at 1999 Broadway St., 27th Floor, Denver, CO 80202 (Dell Inspiron 537 Computer SN 8LX2WH1) as more fully described in Attachment A, which is attached hereto and incorporated herein by reference. I believe Dell Inspiron 537 Computer SN 8LX2WH1 will contain evidence, fruits and instrumentalities of Title 18, United States Code, Section 287 (False and Fictitious Claims), and Title 18, United States Code, Section 1956 (money laundering), and Title 18, United States Code, Section 1343 (wire fraud) as more fully described in Attachment B, which is attached hereto and incorporated herein by reference.

2.  The statements contained in this affidavit are based, in part, on independent knowledge by your affiant and, in part, on information provided to your affiant by other law enforcement officers, the personnel of law enforcement agencies and independent witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested searches, as I have not included all facts

1

developed during the investigation but only those facts that I believe are necessary to establish probable cause as described.

## KNOWLEDGE AND EXPERIENCE OF AFFIANT

3.  Your affiant is a Special Agent with the Internal Revenue Service ("IRS"), Criminal Investigation ("CI") and has been so employed since 2005. Your affiant has been trained in accounting and financial investigative techniques at the Federal Law Enforcement Training Center. Your affiant's formal education includes a Juris Doctor Degree, which I obtained from the University of Iowa in 2000. During the course of **my** official duties with the IRS-CI, I completed training within the IRS as to legal and accounting principles and federal statutes describing criminal violations of the United States Code, as enumerated in Titles 18, 26, and 31. Similarly, I have attended several conferences, seminars, and in-service trainings relating to the tax laws, the Internal Revenue Code, money laundering, and investigating financial crimes, at a variety of law enforcement venues. Your affiant has experience in debriefing defendants, cooperating witnesses, and other persons who have had personal experience and knowledge of the activities associated with fraud schemes and other criminal violations.

4.  Based on your affiant's training and participation in other investigations involving financial crimes, I know that:

    A.  Tax preparers maintain records of income, expenses, assets and liabilities, and client files at locations normally central to their business operations.

    B.  Tax preparers typically maintain records of income, expenses, and assets and liabilities relative to their own tax liability at locations normally central to their business operations.

C.  Tax preparers typically retain copies of tax returns, client information sheets, books, receipts, notes, working papers, etc., which they utilize for their preparation of tax returns.

D.  Tax preparers maintain business records on computers including various types of mass storage devices, i.e. hard drives, floppy discs, external hard drives and storage devices typically known as thumb drives.

E.  Individuals involved in illegal activities maintain books, receipts, notes, ledgers, and other papers to conduct their illegal activities, even though such documents may be in code.  It is common for individuals involved in illegal activities, to hide proceeds, including but not limited to, currency, financial instruments, precious metals, jewelry, vehicles and other items of value and/or proceeds of the illegal activities, records of illegal activities, in secure locations, on their person, and within their containers, residences, offices, garages, storage buildings and safe deposit boxes for ready access, and also to conceal such items from law enforcement authorities.

F.  Individuals involved in illegal financial fraud activities amass large proceeds from these activities, and these individuals then attempt to legitimize these proceeds. I know that to accomplish these goals, these individuals utilize, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

G.  Individuals involved in money laundering activities and other illegal financial fraud activities sometimes attempt to conceal substantial wealth from law enforcement authorities, and in particular the Internal Revenue Service, if they gained such wealth

from illegal activities or are attempting to evade the proper tax liability resulting from such wealth.

H.  The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including but not limited to money laundering and bank and wire fraud.

## BACKGROUND INFORMATION ON THOMAS WILLIAM QUINTIN

5.  In 2006 and 2007, Quintin, who has at least two prior federal felony fraud convictions, was investigated for receiving fraudulent tax refunds.  Quintin was the owner of a tax preparation business where he used deceased individuals' social security numbers ("SSNs") to file U.S. Individual Income Tax Returns with the IRS, and thereby fraudulently obtain tax refund monies.  On August 9, 2007 in D. Colo. Case # 07-cr-00085-WYD, Quintin pled guilty to violations of 42 USC 408(a)(7)(B) (Misuse of a Social Security Number), 18 USC 287 (False Claims Against the United States), 18 USC 1343 (Wire Fraud), and 18 USC 982 (Criminal Forfeiture).  Quintin was sentenced to 46 months in jail, with 36 months supervised release to follow.  Quintin was also ordered to pay $282,588.00 in restitution to the IRS, and to forfeit a vehicle and over $30,000 as involved in and proceeds of his crimes.

6.  In July 2009, Quintin failed to return to the halfway house in Denver where he was serving out the remainder of his sentence described above.  Quintin was indicted by a federal grand jury in the District of Colorado for Escape, on September 15, 2009.  A warrant was issued for Quintin's arrest, and on October 7, 2009, Quintin was arrested by the U.S. Marshals and taken into custody.  At the time of his arrest, Quintin was carrying on his person, $4,000 cash, a cell phone, a thumb drive, mail box key #108, and in his

4

wallet a business card for Arapahoe Pack and Ship located at 9674 East Arapahoe Road, Greenwood Village, CO 80112 with the #108 written on the card.

## EVIDENCE OF PROBABLE CAUSE RELATING TO WIRE FRAUD, MONEY LAUNDERING, AND FALSE CLAIMS

7.  Legitimate tax preparation services will often prepare a tax payer's tax return and advance or loan the tax payer a portion of the anticipated refund (often referred to as an "R.A.L", or "Refund Anticipated-Loan"), so the tax payer has access to funds immediately.  The legitimate tax preparation service will then wire transfer the tax return to the IRS, which in turn wire transfers the refund moneys to the legitimate tax preparation service's bank account.

8.  It appears that Quintin is currently using another social security number scheme to file false tax returns and receive the fraudulent refunds.  Quintin has SSNs of people who are not already in the IRS filing system.  Quintin, purporting to be a tax preparation service, puts those SSNs on the IRS Form 1040 returns with a fictitious name or a name that does not match the real name of the person with that SSN.  Quintin writes a check to the person named on the return from one of his business accounts with "R.A.L." written on the memo line, but holds this check.  Quintin then electronically wires the false tax return to the IRS with his bank routing and account number for the fraudulent refund to be deposited into.  The U.S. Treasury then electronically deposits the refunds into one of Quintin's bank accounts.  Quintin then takes the checks he wrote to the people named on the returns and deposits them into his bank account.  We believe that Quintin is doing this to give the appearance that he is issuing R.A.L.s to the people named on the returns, and therefore, has a legitimate tax preparation business and thus not alert the suspicion of the bank.

9. The IRS Fraud Detection Center (FDC) has traced 641 refunds electronically deposited by US Treasury into Quintin's Total Tax Services Bank Account XXXXXX3973 (#3973) at TCF National Bank. All of the tax returns filed appear to be 2008 tax returns. A sampling of the 641 social security numbers used on the returns indicates that all were for first time filers, and all over the age of 50, which based on my training and experience, I know to be a highly suspicious situation. A random sampling of 104 of these suspicious Quintin returns was queried in Accurint, a resource for online public and non-public information. Out of the 104 SSNs, 32 names associated with the SSNs in Accurint did not match with the names associated with the SSNs in the IRS System. Out of the 104 SSNs queried, the other 72 SSNs resulted in "No Records Found" in Accurint. In other words, none of the Quintin-generated tax refunds contained valid name and SSN information.

10. The IRS database Integrated Data Retrieval System (IDRS) queries resulted in SSNs belonging to taxpayers with basically no filing histories. All of the IDRS taxpayers are also between the ages of 64 to 73 with no Dates of Death recorded. A verification of a sampling of the Forms W-2 filed with the tax returns was done by the FDC Center. The sampling verification revealed that all of the Forms W-2 were false.

11. Your affiant knows that institutions file a Currency Transaction Report ("CTR") for a cash transaction exceeding $10,000. Multiple CTRs have been filed on the Quintin entities of Total Tax Services, Total Tax Services, LLC, and Total Tax and Accounting, all of which purport to be officed at 2421 S University Blvd, Denver, CO 80210; the investigation has revealed that this address is just a mailbox service, not a legitimate office. CTRs show that Quintin withdrew approximately $300,000 out of Denver area

bank accounts in the last 30 days.  On the CTRs, the address for Thomas Quintin is 5650 East Evans, Apt. 105, Denver, CO 80222, and 9674 East Arapahoe Road, Greenwood Village, CO 80112.  Both of those addresses are also simply mail box services, not legitimate business offices.

12.  When Quintin was arrested on October 7, 2009, IRS-CI Agents interviewed witness Jay Culbertson, who was with Quintin, working for Quintin and staying in the same hotel with Quintin.  Culbertson said that Quintin gave him $8,000 to buy his car, a 2003 Toyota Camry, license plate 753 TNC, VIN #4T1BE32K73U223932.

13.  Culbertson also told Agents that he and Quintin have been staying at a hotel called Stay Bridge, located at 7150 South Clinton Street, Centennial, Colorado.  Culbertson said he and Quintin have each been renting a room there.  Culbertson said the room he is renting is room number #3308, and the room Quintin is renting is room #3324.  The hotel's General Manager was interviewed, and he said that room #3324 is registered under the name Andrew Parkins and Parkins pays cash for the room.  The investigation has revealed that Parkins is another associate of Quintin's, who also has a prior felony conviction involving false identification information.  Culbertson has rented his room under his own name, and Culbertson pays for the room in cash provided by Quintin.

14.  Culbertson said all the money he has received since Labor Day 2009 has come from Quintin.  Culbertson said he works for Quintin driving Quintin around and that Quintin gives him $500 a week in cash.  Culbertson gave examples of the places he drives Quintin to such as banks, dentists, and grocery stores.  Culbertson calls Quintin in the morning and Quintin tells him his itinerary.  The banks Culbertson drives Quintin to are TCF National Bank, Compass Bank, Wells Fargo, and First Tier Bank.  Culbertson also

drives Quintin to Quintin's business, located at 7887 E. Belleview Avenue, #1100, Englewood, Colorado. Culbertson said that he has been in Quintin's business office and has personally seen Quintin working on a computer there.

15. Agents discovered from the secretary at the E. Belleview Avenue business location that she was instructed to answer the phone for Total Tax Services by saying "DTC Gold Company". Culbertson said that he has overheard Quintin talking to another person about buying and selling gold in addition to his tax business. Also, the owner of the office building told IRS-CI Agents that the lease for Total Tax Services is under the name Total Tax Services and Thomas Quintin.

16. Culbertson said that Quintin asked him to hold $60,000 in cash for him. Culbertson said that the cash is in a briefcase in Culbertson's hotel room #3308 (in the subject "Samsonite Padlock Briefcase").

17. Culbertson advised agents that in Culbertson's hotel room #3308, there is a computer and printer that Quintin gave him. Culbertson said that based upon personal observations, Quintin will use the computer in Culbertson's room. Culbertson said he thought Quintin was doing tax returns on the computer and Quintin would shred a lot of paper. Quintin would tell Culbertson not to watch him when he was on the computer and told Culbertson to go watch TV instead. Culbertson said there are also a similar computer and printer in Quintin's hotel room #3324.

18. On October 9, 2009, Culbertson gave consent to IRS-CI Agents to take a Compaq Presario computer (the Compaq Computer) and two briefcases from his hotel room #3308. One briefcase is the Samsonite Padlock briefcase that Culbertson said contained the $60,000 given to him by Quintin. The other briefcase, a Samsonite combination lock

briefcase, Culbertson said Quintin told him to buy and gave Culbertson money to buy it. The Compaq Computer was given to Culbertson by Quintin. IRS-CI Agents took the items without searching them, and secured them at the IRS-CI Office located at 1999 Broadway St., Denver, Colorado 80202. IRS-CI Agents are awaiting the issuance of search warrants herein.

19. According to Colorado State Wage and IDRS there have been no wages or income reported for Quintin since 2006.

20. Thomas Quintin was the signer on three accounts at TCF National Bank. One account number is XXXXXX3973 (#3973) and the name on the account is Total Tax Services; the account had an additional signer, "Jay R. Terry", added via the internet banking website. Another account number is XXXXXX0151 (#0151) and the account name is Thomas William Quintin. Third account number is XXXXXX5481 (#5481) and the account name is Total Tax Services. On October 6, 2009, a confidential bank source from a bank in Greenwood Village, Colorado contacted an IRS-CI Investigative Analyst about Quintin. The source noted unusual activity occurring on the account of the requestor, Thomas Quintin / Total Tax Services (account #3973). The SSN listed on the account #3973 for "Terry" revealed it to be associated with a deceased individual. Deposit activity on the account was extremely suspicious since it consisted of hundreds of electronic deposits from the US Treasury, ostensibly tax refunds for numerous individuals (not Quintin) and checks written against the same account (#3973) made payable to numerous individuals but deposited back into that account by Quintin. The endorsements on those checks were not made by the payees but via a rubber stamp endorsement reading: "For Deposit Only Total Tax Services account #3857253973" or

"Credit to the account of the named payee absence of endorsement guaranteed TCF". The memo line on all the checks which were filled out by a typewriter read "R.A.L." which normally stands for "refund anticipated- loan" when seen on other tax preparer's accounts. A random sampling of the SSNs associated with the US Treasury electronic deposits yielded no TCF account holders.

21. A further review of TCF bank records revealed another account in the name of Total Tax Services. That account is #5481, and was opened on 10/02/09 at the Park Meadows Branch with one authorized signer -Thomas W. Quintin. This account was opened with a $25,000 check drawn on the other Total Tax Services account (#3973). Review of a third and final TCF account (personal account # 0151) for Quintin for which he was the lone signer, listed a home address of 9674 E. Arapahoe Road Ste 108, Greenwood Village, CO 80112. This address is actually a commercial mail receiving agency. The bank source determined Quintin's SSN listed on all these subject accounts was not a valid SSN.

22. There are two accounts at Compass Bank on which Thomas Quintin is the signer. One account is XXXXXX3454 (#3454) and the name on the account is Total Tax Services, LLC. The other account is XXXXXX0016 (#0016) and the account is also under the name Total Tax Services, LLC. Security officials at Compass Bank told the IRS-CI analyst that all or most of the deposits going into the two accounts are electronic deposits from US Treasury or from deposits of checks written on the account or transfers from Quintin's Wells Fargo Accounts.

23. There are two accounts at Wells Fargo Bank on which Thomas Quintin is the signer. One account is XXXXXX6721 (#6721) and is in the name of Total Tax and Accounting

and the other account is XXXXXX9055 (#9055) is a savings account in the name of Total Tax. Security Officials at Wells Fargo Bank told the IRS-CI analyst that all or most of the deposits going into the account #6721 are electronic deposits from US Treasury. The Wells Fargo security official also said that the deposits for the second account #9055 consist of $100 a month transfers from the other Wells Fargo account #6721. Two CTRs were filed by Wells Fargo for the account ending in #6721 in the name of Total Tax and Accounting with Thomas Quintin as the sole signer on the account. The CTRs show $30,000 cash being withdrawn by Quintin in September 2009. The SSN for Quintin is his correct SSN, but the addresses given for both the business and Quintin are mail box service locations, the same method Quintin used on the TCF accounts.

24. There are two accounts at FirsTier Bank on which Thomas Quintin is the signer. One account is XXX0622 (#0622) and the name on the account is Total Tax Services, LLC. The other account is XXX0995 (#0995) and the account is also under the name Total Tax Services, LLC. A security official at FirsTier told IRS-CI analyst that all or most of the deposits going into the accounts are electronic transfers from US Treasury.

## SEARCH

### Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI office located at 1999 Broadway St., 27th Floor, Denver, CO.

25. As described above and in Attachment B, this application seeks permission to search and seize records that might be found on the Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI Office at 1999 Broadway St., 27th Floor, Denver, CO 80202, in whatever form they

are found.  See paragraphs 1, 12-14, 17 and 18.  Some of these electronic records might take the form of files, documents, and other data that is user-generated.  Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis. This computer was previously seized pursuant to Search Warrant 09-sw 5319-CBS.

26.  For example, based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

27.  Also, again based on my training and experience, wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is

technically possible to delete this information. Data on the storage medium not currently associated with any file can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

28. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for evidence that establishes how computers were used, the purpose of their use, who used them, and when.

29. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

30. "User attribution" evidence can also be found on a computer and is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, and correspondence (and the data

associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

31. Searching the Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI Office at 1999 Broadway St., 27th Floor, Denver, CO 80202for the evidence described in the attachment may require a range of data analysis techniques.  For example, information regarding user attribution or Internet use is located in various operating system log files that are not easily located or reviewed.  Or, a person engaged in criminal activity will attempt to conceal evidence of the activity by "hiding" files or giving them deceptive names.  As explained above, because the warrant calls for records of how a computer has been used, what it has been used for, and who has used it, it is exceedingly likely that it will be necessary to thoroughly search storage media to obtain evidence, including evidence that is not neatly organized into files or documents.  Just as a search of a premises for physical objects requires searching the entire premises for those objects that are described by a warrant, a search of this premises for the things described in this warrant will likely require a search among the data stored in storage media for the things (including electronic data) called for by this warrant.  Additionally, it is possible that files have been deleted or edited, but that remnants of older versions are in unallocated space or slack space.  This, too, makes it exceedingly likely that in this case it will be necessary to use more thorough techniques.

32. Based upon my knowledge, training and experience, I know that a thorough search for information stored in storage media often requires agents to seize most or all storage media to be searched later in a controlled environment.  This is often necessary to ensure

the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. Additionally, to properly examine the storage media in a controlled environment, it is often necessary that some computer equipment, peripherals, instructions, and software be seized and examined in the controlled environment. This is true because of the following:

A.  The nature of evidence. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.

B.  The volume of evidence. Storage media can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

C.  Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on-site. However, taking the

storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

D.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

33.  Based on the investigation described above, particularly noting paragraphs 4, 8-18, I am aware that the Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI Office at 1999 Broadway St., 27th Floor, Denver, CO 80202 was used to generate and/or store documents used in the false claims, wire fraud, and money laundering scheme.  Based on my training and experience, I further state that if evidence on the Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI Office at 1999 Broadway St., 27th Floor, Denver, CO 80202  appears to relate to criminal acts other than those outlined in this affidavit, those items will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal acts.

### Conclusion

34. Based upon the facts and circumstances described, your affiant submits that there is probable cause to believe that on the Dell Inspiron 537 Computer SN 8LX2WH1 found at 7150 South Clinton Street, Room #3324, Greenwood Village, CO and being stored at the IRS-CI Office at 1999 Broadway St., 27th Floor, Denver, CO 80202 as described on Attachment A are the evidence, fruits and instrumentalities of Title 18, United States Code, Section 287 (False and Fictitious Claims), and Title 18 United States Code, Section

1956 (money laundering), and Title 18 United States Code, Section 1343 (wire fraud) (as described on Attachment B).  Accordingly, I request that this Court issue a search warrant authorizing the search of the location described in Attachment A, and the seizure of items described in Attachment B, which attachments are incorporated by reference as if fully set forth herein.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Trista G. Merz, Special Agent
IRS-CI

Subscribed to and sworn before me this 27th day of Oct 2009, at 10:15

United States Magistrate Judge
District of Colorado